**KURT S. ADLER, INC.**

v.

**UNITED STATES.**

C.D. 4354;  Protest No. 67/62574–35570–67.

United States Customs Court.
May 19, 1972.

944

Serko & Sklaroff, New York City (Murray Sklaroff, New York City, and Stuart A. Ring of counsel), for plaintiff.

Harlington Wood Jr., Acting Asst. Atty. Gen. (James Caffentzis, New York City, Trial Atty.), for defendant.

NEWMAN, Judge:

The importations involved in this case are glass Christmas ornaments exported from Czechoslovakia packed in containers comprised of plastic inserts, "see-through" box tops and box bottoms. It appears that the importer purchased the plastic insert and box top components of the containers in West Germany, and directed that they be shipped to the manufacturer of the Christmas ornaments in Czechoslovakia. In the latter country, the inserts and box tops (together with box bottoms manufactured in Czechoslovakia) were used to package the imported glass ornaments.

The Regional Commissioner of Customs at the port of New York assessed duty on the importation at the rate of 60 per centum ad valorem under the provision in item 545.85 of the Tariff Schedules of the United States (TSUS) for Christmas ornaments of glass (other than beads), valued at not more than $7.50 per gross. The duty rate of 60

per centum ad valorem is prescribed in column 2 of the schedules, which rate column is made applicable to products of Communist countries, including Czechoslovakia, by General Headnote 3(e), TSUS.

Pursuant to General Headnote 6(b)(i), TSUS, and section 402 of the Tariff Act of 1930, as amended, the Regional Commissioner included the cost of the containers (which included the inserts and box tops) in the dutiable value of the Christmas ornaments. Consequently, the inserts and box tops were, "in effect", assessed with duty at the rate of 60 per centum ad valorem.

Plaintiff claims that the plastic inserts and box tops are "products" of West Germany and, following the most-favored-nation principle, their cost should have been assessed with duty at the column 1 rate of 40 per centum ad valorem under item 545.85, TSUS. The classification of and the rate of duty assessed on the glass ornaments are not disputed; nor is any question raised respecting the box bottoms.

For the reasons stated herein this action is dismissed.[1]

### THE RECORD

The record consists of the testimony of plaintiff's president, Kurt S. Adler; and plaintiff's exhibits representative of the plastic inserts, the box tops and bottoms, and the glass Christmas ornaments. The official entry papers were received in evidence without marking. The pertinent facts are these:

As noted, the inserts and box tops were manufactured for plaintiff in West Germany, and at plaintiff's direction were shipped to the supplier of the Christmas ornaments (and box bottoms) in Czechoslovakia. Mr. Adler explained that his reason for ordering the inserts and box tops in West Germany was that Czechoslovakia did not have the color offset printing facilities nor the requi-

---

[1]. This case was tried before me on October 4, 1971. Accordingly, the Customs Courts Act of 1970, Pub.L. 91–271, 84 Stat. 274, effective October 1, 1970, is applicable.

site plastics technology for manufacturing the type of packaging he wanted.[2]

Plaintiff paid the West German manufacturers directly for the inserts and box tops; and plaintiff also paid for all shipping and insurance charges incurred in transporting them to Czechoslovakia. The inserts and box tops were not altered or processed while in Czechoslovakia, nor were any of them sold or distributed while in Czechoslovakia. In short, plaintiff owned the inserts and box tops from the time they were purchased in West Germany until they were received in the United States containing the imported glass Christmas ornaments.

The invoices of the exporter of the glass Christmas ornaments do not reflect the cost of the inserts and box tops. Separate invoices covering the inserts and box tops were supplied by plaintiff to the customs officials at their request.

Mr. Adler testified that his practice of ordering the inserts and box tops in West Germany and shipping them to Czechoslovakia had been in effect for about six years respecting the inserts, and approximately thirteen or fourteen years respecting the box tops. Manifestly, plaintiff's practice over this period of time does not affect or prejudice its rights to litigate the issues raised in this case.

### GENERAL HEADNOTE 6(b) (i)

General Headnote 6(b) (i), so far as pertinent, provides:

6. *Containers or Holders for Imported Merchandise.* For the purposes of the tariff schedules, containers or holders are subject to tariff treatment as follows:

\* \* \* \* \* \*

(b) *Not imported Empty*: Containers or holders if imported containing

or holding articles are subject to tariff treatment as follows:

(i) \* \* \* [C]ontainers of usual types ordinarily sold at retail with their contents, are not subject to treatment as imported articles. Their cost, however, is, under section 402 or section 402a of the tariff act, a part of the value of their contents and if their contents are subject to an ad valorem rate of duty such containers or holders are, in effect, dutiable at the same rate as their contents. \* \* \*.

The Government contends that under the above headnote "containers of usual types ordinarily sold at retail with their contents" (hereinafter referred to as "usual containers") are not subject to assessment of duty separately from their contents; and that the cost of such containers is to be included in the dutiable value of their contents. Accordingly, defendant argues that the inserts and box tops are not separately dutiable at the column 1 rate of 40 per centum ad valorem under item 545.85, as claimed by plaintiff.

Plaintiff concedes that the inserts and box tops are components of usual containers within the purview of the headnote. Nevertheless, plaintiff insists that under the circumstances of this case the inserts and box tops may in compliance with the headnote be assessed separately at the column 1 rate under item 545.85 as "products" of West Germany, while the box bottoms and Christmas ornaments may be separately assessed at the column 2 rate under item 545.85 as "products" of Czechoslovakia.

In substance, plaintiff's position is that headnote 6(b) (i) is a "classification statute", and as such the headnote requires only that usual containers and their contents be classified under the same item number of the schedules.[3]

---

2. Adler testified that the Czechs were able to package the ornaments only in plain chip board boxes with egg crate dividers; and that the ornaments were unsalable at retail in such packaging because there was no visual display of the merchandise. The German-made box tops had

clear plastic "see-through windows" enabling the customer to view the ornaments in the box thus facilitating their sale (R. 10).

3. The Tariff Schedules of the United States use a "5-digit system of decimal number-

Thus, as interpreted by plaintiff, the headnote does not require that usual containers and their contents be *assessed at the identical rate of duty*, "where the situation as here, warrants otherwise".

■ Plaintiff emphasizes that in headnote 6(b) (i) Congress used the words "in effect" to qualify the words "dutiable at the same rate". Continuing, plaintiff contends the latter quoted words should be interpreted as though they read "classifiable under the same item number, but not necessarily dutiable at the same rate". I find such construction of the headnote to be entirely without merit.

The words "in effect" obviously were inserted for the reason that usual containers are not subject to treatment as imported articles, and are dutiable only by virtue of inclusion of their cost in the value of their contents. Consequently, when the contents are subject to an ad valorem duty their usual containers are "in effect" dutiable at the same rate as their contents. Indeed, in the Tariff Classification Study Interim Report of March 15, 1955, the Tariff Commission states: [4]

> * * * [C]ontainers, *even when not treated as merchandise*, may serve to increase the amount of duties assessable on the merchandise imported therein. *This occurs by virtue of section 402 of the tariff act, as amended, relating to the valuation of merchandise, under which section the cost of all containers and coverings of whatever nature is included as part of the value of the goods*. Therefore, when imported goods are subject to an ad valorem rate of duty, the duty *in practical effect* is assessed at the same rate of the cost of the containers or coverings. [Emphasis added.]

Contrary to plaintiff's interpretation, the utilization of "in effect" in the headnote points up a Congressional intent that usual containers be assessed at the same rate of duty as their contents when the contents are dutiable on an ad valorem basis. Hence, the phrase "in effect" has nothing to do with the classification of usual containers,[5] but is addressed solely to assessment of duty at the ad valorem rate applicable to the contents

Additionally, by using the words "not subject to *treatment* as imported articles" (emphasis added), Congress must have intended that usual containers be subject to neither classification nor *assessment of duty* separately from their contents. Compare, however, General Headnote 6(b) (ii) covering usual shipping or transportation containers, if designed for, or capable of, reuse which expressly "are subject to treatment as imported articles separate and distinct from their contents". See also Headnotes 6(a) and 6(b) (iii).

In sum, headnote 6(b) (i) is clear that the cost of usual containers must be included in the dutiable value of their contents. Therefore, such containers are "in effect" dutiable at the same rate as their contents. Concededly, this is precisely how the instant importation was assessed by the Government.

In addition to the clear expression of Congressional intent in the language of headnote 6(b) (i), I have noted also a long-standing Congressional policy of simplifying customs administration by including the cost (or value) of usual containers in the value of the goods they contain, rather than by treating such containers as separate tariff entities. See Spielman v. United States, 2 Ct.Cust. App. 61, 62–63, T.D. 31626 (1911). Plaintiff does not deny that such long-

ing which provides a separate and distinct item number for each and every rate line". Tariff Classification Study Submitting Report (November 15, 1960), page 9.

4. See Appendix A of the Tariff Classification Study submitting Report, November 15, 1960, at page 53.

5. Plaintiff "concedes" that the inserts and box tops were properly "classified" under item 545.85, TSUS. However, pursuant to headnote 6(b) (i) the inserts and box tops were not subject to "classification" under item 545.85, nor under any other item number of the schedules.

standing policy is reflected in headnote 6(b) (i) and the valuation provisions of the Tariff Act (sections 402 and 402a). Rather, plaintiff claims, in substance, that in the present case there is an overriding consideration arising out of the alleged applicability of the "most-favored-nation" principle to the inserts and box tops. Therefore, the interrelationship of headnote 6(b) (i) and the statutory provisions embodying the most-favored-nation principle will now be considered.

## MOST-FAVORED-NATION PRINCIPLE

■ Briefly, the most-favored-nation principle is that the United States will accord the products of all contracting parties to a trade agreement an equality of tariff treatment. See Jackson, World Trade and The Law of GATT, § 11.3, p. 255 (1969). Thus, 19 U.S.C. § 1881 captioned "Most-favored-nation principle", provides that "any duty * * * proclaimed in carrying out any trade agreement under this subchapter * * * shall apply to products of all foreign countries, whether imported directly or indirectly".

Additionally, General Headnotes 3(e) and 3(f) (originally 3(d) and 3(e)) of the Tariff Schedules embody the most-favored-nation principle and the countries excepted from its benefits. Those headnotes read:

3. *Rates of duty.*—The rates of duty in the "Rates of Duty" columns numbered 1 and 2 of the schedules apply to articles imported into the customs territory of the United States as hereinafter provided in this headnote:

\*     \*     \*     \*     \*

(e) *Products of Communist countries.*—Notwithstanding any of the foregoing provisions of this headnote, the rates of duty shown in column numbered 2 shall apply to products, whether imported directly or indirectly, of the following countries and areas pursuant to section 401 of the Tariff Classification Act of 1962, to section

231 or 257(e) (2) of the Trade Expansion Act of 1962, or to action taken by the President thereunder:

\*     \*     \*     \*     \*     \*

Czechoslovakia

\*     \*     \*     \*     \*     \*

(f) *Products of all other countries.*—Products of all countries not previously mentioned in this headnote imported into the customs territory of the United States are subject to the rates of duty set forth in column numbered 1 of the schedules.

\*     \*     \*     \*     \*     \*

As may be observed above, headnote 3(e) prohibits the application of the reduced rates of duty in Column 1 of the schedules to products of designated Communist countries such as Czechoslovakia (which are assessed at the column 2 rates of duty), while headnote 3(f) provides that products from all other countries (which include West Germany) shall be entitled to the lower rates in column 1. It is, then, the Congressional policy and intent to give the benefit of the reduced rates of duty in column 1 to products of countries other than those which are listed in headnote 3(e), respecting which the column 1 rates are specifically withheld.

Plaintiff insists that the inserts and box tops are imported "products" within the common meaning of that term as used in headnotes 3(e) and 3(f). Hence, it is plaintiff's contention that "regardless of the status of these box tops and inserts as usual containers under the provisions of Headnote 6(b) (i)", the inserts and box tops are "products" imported from a most-favored-nation, i. e., West Germany, and as such they are entitled to the rate of duty specified in column numbered 1 under item 545.85.

■■ Although, plainly, the inserts and box tops were "products" of West Germany *when they left that country,* it is fundamental that the tariff status of merchandise is controlled by its condition *at the time of importation into the United States.* When the inserts and box tops arrived in the United States, they

**948**

were no longer "products" of West Germany but rather they were the usual containers of products imported from Czechoslovakia.[6] And as such, headnote 6(b) (i) became applicable to the inserts and box tops.

 Headnote 6(b) (i) however, must be construed and applied *in pari materia* with headnote 3. Construing these headnotes *in pari materia* there was no denial of most-favored-nation treatment to a "product" of West Germany.

Under the introductory paragraph of General Headnote 3, the rates of duty specified in columns numbered 1 and 2 of the schedules apply to imported *"articles"*, whereas in headnote 6(b) (i) Congress manifested its intent that usual containers should not be subjected to treatment as imported "articles". It follows that the inserts and box tops may not be separately assessed at a rate of duty set forth in column 1 of the schedules pursuant to headnote 3(f). The fact that headnotes 3(e) and 3(f) make reference to "products", while the introductory provision of headnote 3 and headnote 6(b) (i) refer to "articles", is inconsequential as there is no distinction between those two terms in headnotes 3 and 6(b)(i).

## APPLICATION OF AD VALOREM RATE TO THE COST OF INSERTS AND BOX TOPS

Plaintiff, as we have seen, urges that "the *cost* of the box tops and plastic inserts should have been assessed *ad valorem* duty at the column 1 rate of 40% * * *". (Emphasis added.) For the following additional reason the relief requested by plaintiff may not be granted.

The ad valorem duty in column 1 under item 545.85, TSUS, clearly may not be applied to a *cost per se,* but rather must be applied to an *appraised value* as determined under section 402 or 402a. However, because under headnote 6(b) (i) usual containers of imported merchandise are not subject to treatment as imported articles, *ipso facto* they are not subject to appraisement pursuant to section 402 or 402a.[7] Consequently as column 1 under item 545.85, TSUS, specifies an ad valorem duty and as the inserts and box tops are not subject to appraisement, the court could not in any event order a reliquidation of the inserts and box tops at the column 1 rate under item 545.85, as claimed by plaintiff.

The action is dismissed and judgment will be entered accordingly.

---

6. Stated differently, the "product" of Czechoslovakia in this case included the usual container as well as its contents for purposes of headnote 3(e).

7. Of course, as previously noted, the cost of the inserts and box tops must be included in the appraised value of the Christmas ornaments under the head note and valuation statute.