**CRYSTAL CLEAR INDUSTRIES,**
**Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 91–12–00918.**

United States Court of International Trade.

Jan. 28, 1994.

---

Grunfeld, Desiderio, Lebowitz & Silverman, Steven P. Florsheim and Judith A. Schechter, New York City, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, attorney-in-charge, Intern. Trade Field Office, Edith Sanchez Shea, United States Customs Service, Mark G. Nackman, Washington, DC, of counsel, for defendant.

## OPINION

MUSGRAVE, Judge.

### *Background*

This matter was submitted to trial for decision regarding the proper classification of packaging produced to ship and market glassware from column II countries in the United States. The parties stipulated to the preponderance of the facts and the issues in a pretrial order dated July 14, 1993. Where the parties contest the facts, or interpret them differently, the Court will so note appropriately.

The subject merchandise consists of glassware gift boxes produced in Austria and Italy, whose products are subject to column 1 ("most favored nation" or "MFN") duty rates upon importation into the United States. The boxes were shipped to the nations in which the glassware was produced. The glassware was packed in the gift boxes and exported to the United States. The boxes were imported containing glassware produced in East Germany, Romania, and Czechoslovakia. Those countries' products are subject to column 2 duty rates. The subject boxes did not enter the commerce of the column 2 nations in which their glassware contents were produced.

The gift boxes entered in 1988 are boxes of paper, or of paperboard, or of papier-mache, or of combinations thereof. Those boxes are not described by TSUS items 256.48 or 256.-52. The gift boxes entered in 1989 and 1990 are cartons or boxes of corrugated paper or paperboard.

Upon liquidation, duties were assessed on the value of the glassware under the appropriate TSUS or HTSUS provisions for glassware set forth in Schedule A of plaintiff's complaint. The classification of the glassware under these provisions is not disputed by plaintiff. The declared values of the boxes were included in the dutiable value of the glassware as packing for the glassware.

The boxes in this case are not sold, advertised, marketed or merchandised separately from the glassware. Typically, the box manufacturer has possession of the boxes for approximately one week and the glassware manufacturer has possession of the boxes for approximately two months.

Items shipped into the United States by Crystal Clear in decorated cardboard boxes are usually, but not always, sold to consumers at retail in the decorated boxes. The value of the crystal to the consumer does not change depending on whether the crystal is packaged in a plain box or a decorated box. Crystal Clear does not sell glassware at re-

tail except for two annual warehouse sales at plaintiff's facilities in New Jersey.

### *Discussion*

*1. Plaintiff's Claims* [1]

█ Plaintiff claims that the Customs Service improperly classified the imported glassware gift boxes under TSUS item 546.60, or under one of four subheadings in the HTSUS, and assessed duties at the same column II duty rates applicable to their glassware contents (60% or 45% *ad valorem* ). The proper classification of the imported gift boxes, according to plaintiff, is under TSUS item 256.54,[2] or HTSUS subheading 4819.10.00,[3] and they are dutiable respectively, at the column I rate of 3.9% and 2.8% *ad valorem.*

In the alternative, plaintiff claims that the subject gift boxes are classifiable under the same tariff provision as their glassware contents, but at the column I duty rates therefor, at 30% or 7.6% *ad valorem.*

*2. Defendant's Claims as to Non–Liability* [4]

To sustain its claim that the boxes were classified properly, defendant cites TSUS General Headnote and Rule of Interpretation 6(b)(i):

Containers or holders if imported containing or holding articles are subject to tariff treatment as follows:

(i) the usual or ordinary types of shipping or transportation containers or holders, if not designed for, or capable of, reuse, and containers of usual types ordinarily sold at retail with their contents, are not subject to treatment as imported articles. Their cost, however, is under section 402 of the tariff act, a part of the value of their contents and if their contents are subject to an *ad valorem* rate of duty such

containers or holders are, in effect, dutiable at the same rate as their contents, ...

The Customs Service maintains that the boxes are the "usual or ordinary types of shipping containers or holders" and the boxes are designed for and only capable for use in the packing of glassware. Further, the boxes are ordinarily sold at retail with the glassware packed inside them. Therefore, where the TSUS is applicable, the inclusion of the value of the boxes in the dutiable value of the glassware packed inside them is appropriate, according to defendant.

Customs applied similar analysis to the claim under the HTSUS. HTSUS General Rule of Interpretation 5(b) states:

Subject to the provisions of rule 5(a) above, packing materials and packing containers entered with the goods therein shall be classified with the goods if they are of a kind normally used for packing such goods. However, this provision does not apply when such packing materials or packing containers are clearly suitable for repetitive use.

Customs recites that the boxes were entered with the glassware, are of a kind normally used for packing glassware and are not suitable for repetitive use. Therefore, where the HTSUS is applicable, the inclusion of the value of the boxes in the dutiable value of the glassware packed inside them is appropriate.

Additionally, Customs contends that the inclusion of the boxes in the dutiable value of the glassware is consistent with 19 U.S.C. § 1401a(b)(1)(A) which states:

(1) The transaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States, plus amounts equal to—

Cartons, boxes cases, bags and other packing containers, of paper, paperboard, cellulose wadding or webs of cellulose fibers; box files, letter trays and similar articles, of paper of paperboard of a kind used in offices, ships or the like:
Cartons, boxes and cases, of corrugated paper or paperboard.

---

1. See Schedule D–1, Pretrial Order.

2. Item 256.54, TSUS, provides for a rate of duty of 3.9% *ad valorem* for "Boxes of paper, of paperboard, of paper-mache, or of any combination thereof: ... Other ... Other".

3. Subheadings 4819 and 4819.10.00, HTSUS provides for a duty rate of 2.8% *ad valorem* for:

4. See Schedule D–2, Pretrial Order.

(A) the packing costs incurred by the buyer with respect to the imported merchandise;

\*   \*   \*   \*   \*   \*

Therefore, defendant asserts, the various applicable statutes indicate that its classification was proper and plaintiff's claims should be dismissed.

### 3. Issues under the Tariff Schedules

The Court must determine whether the subject gift boxes that were entered in 1988 (i.e., under the TSUS) are the usual or ordinary types of shipping or transportation containers or holders, if not designed for or capable of reuse, or are containers of usual types ordinarily sold at retail with their contents and;

Whether the subject gift boxes that were entered in 1989 and 1990 (i.e., under the HTSUS) are of a kind normally used for packing the goods that they contained, and are clearly not suitable for repetitive use.

### 4. Plaintiff's Legal Representations and Presentation at Trial

Plaintiff sought to establish that the gift boxes are utilized to sell, merchandise, and market table top articles in a minority of instances: They are not the usual or ordinary packaging utilized to package giftware. The ordinary method of packaging for merchandising, plaintiff reasoned, is in plain corrugated box.

To support plaintiff's argument that the gift boxes are "unusual," plaintiff asserts that its gift boxes were ordered during a trend, were much more expensive than plain boxes, were highly decorated, and increased the salability of the glassware. See TSUS General Headnote 6(b)(iii); *Fontana Hollywood Corp. v. United States,* 64 Cust.Ct. 204, C.D. 3981 (1970) (wine bottles imported from Italy measuring four feet in height were "unusual" and separately classified by Customs) [5] and *United States v. W.J. Mulligan & Co.,* 29 C.C.P.A. 117, 122, C.A.D. 179, 1941 WL 4521 (1941) (glass containers filled with alcoholic

liqueurs containing 4/100 of a liter a piece were "unusual" and were classified separately). Plaintiff further notes that in addition to the peculiar form of the packaging, the value of the packaging was an important factor in *Fontana* and *W.J. Mulligan* influencing whether the container was separately dutiable.

Moreover, plaintiff argues that the decorative gift boxes were purely a marketing tool disassociated from the packaging *per se*. In fact, a significant amount of the gift boxed glassware is first packed in the ordinary plain corrugated box that plaintiff claims is the "usual" packaging material. Plaintiff explains that gift boxing was a transitory phenomena in the mid–1980s that permitted the merchant to display merchandise without having to remove it from the packing material.

Plaintiff makes the additional claim that because both parties agree that the boxes never "entered the commerce" of the column II countries in which the glassware was manufactured, the boxes should be assessed a column I rate regardless of their ultimate classification. Plaintiff argues that it is a well-established principle of customs law that the origin of an article is the country where the article was manufactured, produced, or grown. See 19 C.F.R. § 134.1(b). The only way for a product to lose "origin" in the source country is if it was "substantially transformed" in a second foreign country, or if it becomes a *bona fide* part of the commerce of the second foreign country.

According to plaintiff, the boxes were fully produced in the column I country and needed no assembly in the column II country. Therefore, the boxes were not substantially transformed. In addition, the parties agree the boxes never entered the commerce of the second foreign country. Accordingly, Plaintiff concludes that the duty rate should remain that of column I, the country of origin.

Plaintiff argues, in the alternative, that even if the Court were to find Crystal Clear's

---

**5.** In that case the plaintiff urged Customs to classify the container along with its contents. Naturally, when the contents incur low tariff assessments in relation to the packaging, parties

will urge that the container be assessed along with the contents. Likewise, when the contents bear relatively high tariffs, the parties will urge that the container be assessed separately.

gift boxes to be of the "normal" kind used for marketing and transporting glassware, the boxes would be classifiable under the same provision as the glassware, but would be dutiable at the duty rates applicable to glassware from the country of origin of the boxes, or in this case at column I duty rates.

As its next alternative, Plaintiff invites the Court to determine the rates on the boxes differently under the TSUS and the HTSUS. *See Plaintiff's Pretrial Brief at 19.* In sum, General Headnote 6(b)(i) to the TSUS indicates normal packaging should be "dutiable at the rate" of the product contained within, whereas GRI 5(b) of the HTSUS indicates that the packing materials shall be classified with the goods contained within. Plaintiff cites many examples of identical products under identical classifications receiving different rates (*e.g.*, MFN/non MFN, GSP, Column I/Column II) *See id. at 19–20.* Therefore, under the HTSUS, plaintiff contends that there is some flexibility to classify the packing materials with the glassware yet apply a different rate, *i.e.*, the column I rate to those materials.

Plaintiff further claims that General Note 3(b) to the HTSUS is a punitive provision directed solely and narrowly at the products of communist countries. Plaintiff points out that the Court has adopted a bifurcated process for assessing duties against shipments of products with mixed communist and noncommunist country origins. *See Coastal States Marketing, Inc. v. United States,* 10 CIT 613, 646 F.Supp. 255 (1986) (Court assessed Italian and Soviet portions of blended fuel stock under different rates). Plaintiff asserts that MFN applies whether the product was shipped directly or indirectly from the column I country. *See Plaintiff's Brief at 22;* 19 U.S.C. § 1881. This argument, while theoretically appealing, is unavailing if the packaging is ordinary or usual, because the effect of the case law is to disenfranchise that packaging of its original citizenship for Customs purposes in favor of the identity of the contents. *See Kurt S. Adler Inc. v. United States,* 68 Cust.Ct. 162, 168, C.D. 4354, 343 F.Supp. 943 (1972), *aff'd,* 61 C.C.P.A. 68, C.A.D. 1122, 496 F.2d 1220 (1974), *infra.*

Finally, Crystal Clear purchased the boxes in distinctly separate commercial transactions from its purchases of the articles contained within. To assess the boxes at the column II rate, plaintiff argues, would "deny Crystal Clear and the box manufacturers the rights that their respective governments have negotiated pursuant to international and bilateral trade agreements, violate the language of General Note 3(a)(i), and extend the application of General Note 3(b) beyond that intended by Congress." *See Plaintiff's Brief at 23, citing Ashdown, U.S.A., Inc. v. United States,* 12 CIT 808, 812, 696 F.Supp. 661, 665 (1988).

In *Ashdown,* Customs assessed a column II rate against a printing press manufactured in East Germany which was purchased in West Germany, used, and then resold in the United States. The Court held that the press, having been operated for several years, had sufficiently entered the commerce of West Germany and accordingly should be assessed at the column I rate for most favored nations. The Court ruled that the intent of Congress had not been thwarted because the origin of the press was transferred, in effect, to West Germany for the purposes of the Customs laws after entering into commerce there for a certain amount of time.

In the case at bar, plaintiff argues the opposite facts, *i.e.*, that the product never entered the commerce of the second country, and infers that Congress meant the column II rates to apply strictly and narrowly to products made in and originating from the column II country. Nowhere has any cite to legislative history been offered to the Court to support this notion. In any event, plaintiff has not resolved the conflict between it's interpretation of the tariff schedules and the Customs Court's interpretation of the tariff statutes that has treated certain packaging and part of the contents within. *See Kurt S. Adler Inc. v. United States,* 68 Cust.Ct. 162, 168, C.S. 4354, 343 F.Supp. 943 (1972), *aff'd,* 61 C.C.P.A. 68, C.A.D. 1122, 496 F.2d 1220 (1974), *infra.*

5. *Defendant's Legal Representations and Presentations at Trial*

■ As defendant duly notes, an agency's interpretation of a statute that it is charged

with administering is accorded a presumption of validity; a reviewing court is not at liberty to substitute its own judgment for that of the agency. *Young v. Community Nutrition Institute,* 476 U.S. 974, 980–81, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986); 28 U.S.C. § 2639(a)(1) (the administrating authority is presumed correct; the burden of proving otherwise rests upon the party challenging its decision); *see also, Jarvis Clarke v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). When Congress has not directly addressed the precise question at issue, "The question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

Defendant contends that the trial testimony and exhibits demonstrated that the packaging at issue is ordinary and usual, and is used by other glassware companies. Therefore, Customs' classification was at least reasonable and entitled to the presumption of correctness. Defendant cites the legislative history to the TSUS which appears to support its position that the packaging is usual. *See Defendant's Pretrial Brief at 12–13.* In interpreting Rule 6(b)(i) Congress found that:

> The concept of "usual" containers includes a variety of containers such as plastic envelopes for carrying rainwear when not in use, cases designed for electric shavers, and tobacco tins, which may continue to be used by the purchaser to "house" the original contents but which, when that purpose has been fulfilled, are usually discarded because of their lack of durability or their general unsuitability for other uses. On the other hand, this concept does not include containers, even though sold at retail with their contents, if such containers are designed to have significant uses quite apart from their original contents. For

example, humidors filled with tobacco, miniature cedar chests containing cigars or candy, and doll houses filled with confections would not be regarded as "unusual" [*sic*] containers.

*Id. at 12, citing* H.R.Rep. No. 342, 89th Cong., 1st Sess., at 5.[6] Defendant lists several other criteria that the boxes do not meet: reusability, enhancement of value of merchandise within, and independent commercial viability of packaging itself (*e.g.,* steel drums).

Finally, Customs argues that its assessment of duties at the column II rate of duty is consistent with the applicable statutes and case law. Principally, Customs argues that at the time of their entry in the United States, the gift boxes were no longer products of column I countries but were packing materials for products of column II countries. *Defendant's Pretrial Brief at 16, citing Kurt S. Adler Inc. v. United States,* 68 Cust.Ct. 162, 168, C.S. 4354, 343 F.Supp. 943 (1972), *aff'd,* 61 C.C.P.A. 68, C.A.D. 1122, 496 F.2d 1220 (1974). This Court agrees with the Customs Service's argument that Crystal Clear's predicament is not fundamentally distinguishable from the situation in *Adler.*

In *Adler,* plastic and box tops from Germany were sent to Czechoslovakia to package Christmas ornaments, and valued along with the ornaments under column II upon exportation to the United States. The *Adler* Court found that "by using the words 'not subject to *treatment* as imported articles' (emphasis added), Congress must have intended that usual containers be subject to neither classification nor assessment of duty separately from their contents." *Id.* at 166, 343 F.Supp. 943. In effect, under these circumstances, the packaging is merged with its contents, and ceases to have an identity of its own for classification or assessment purposes.

---

**6.** The House Report actually states "usual" rather than "unusual" in the last line cited by defendant, and thus is supportive of defendant's position. The Senate Report came to a similar conclusion:

> **Section 4. Containers not imported empty.**—Under this provision, it is made clear that usual types of containers ordinarily sold at retail with their contents are not to be treated as imported articles when imported filled with merchandise. This conforms to practice under the old tariff structure.

S.Rep. No. 530, 89th Cong., 1st Sess., at 25, 1965 U.S.Code Cong. & Admin.News, at 3416, 3439.

Thus, plaintiff's citations, to *Coastal States Marketing, Inc.* for example, are unavailing. In *Coastal States Marketing, Inc.*, although the Court assessed Italian and Soviet portions of blended fuel stock under different rates, neither portion could fairly be characterized as the packaging material for the other. The case at bar deals with packaging. Both the tariff schedules and the controlling case law indicate that ordinary packaging, whatever its origins, is classified and assessed along with its contents. The origin of the packaging is subsumed in the origin of the contents.

Plaintiff's arguments that the principles of MFN and the General Notes 3(a)(I) and 3(b) have not been honored in Customs' classification have already been spoken to by the *Adler* Court:

> Although, plainly, the inserts and box tops were "products" of West Germany *when they left that country*, it is fundamental that the tariff status of merchandise is controlled by its condition *at the time of importation into the United States.* When the inserts and box tops arrived in the United States, they were no longer "products" of West Germany, but rather they were the usual containers of products imported from Czechoslovakia.[6] And as such, headnote 6(b)(i) became applicable to the inserts and box tops.

*Adler*, 68 Cust.Ct. at 168, 343 F.Supp. 943. The Court of Customs and Patent Appeals affirmed the lower court interpretation, thus investing it with binding effect. In addition, the appellate court reasoned that MFN was not violated because "the District Director afforded the items in question no less favorable treatment than he would have afforded the same items originating in any other most-favored nation under the same conditions." *Adler*, 61 C.C.P.A. at 72, 496 F.2d at 1224, *citing* Jackson, *World Trade and the Law of GATT* § 11.3 at 255 (1969). As affirmed, the *Adler* analysis is binding on this Court.

Upon visual inspection at trial, the Court is unconvinced that the various packaging materials adduced for Crystal Clear's products are unusual, as that term has been interpreted in the case law. For example, many of the exhibits consisted of corrugated paper or paperboard with a glossy finish depicting the glassware item contained within. This style of packaging and advertising was common during the period in question, and not unusual in the same sense that a four-foot high wine bottle sold for marketing purposes is different from a normal 750 milliliter bottle.[7] Similarly, in contrast to a cigar box or a steel drum, the packaging was not valuable or reusable in its own right. Just because the gift boxes were an alternative marketing device from the plain corrugated paper does not and did not make them "unusual" in the market described by the witnesses. The Court so finds under both the TSUS and HTSUS standards.

### Conclusion

For the foregoing reasons, the Court finds that Customs' classification of the above-described glassware packaging is reasonable and correct. If this classification indirectly penalizes a most favored nation or seems anachronistic, it is for Congress to address in its revision of the Tariff Schedules, not for the courts. Judgment is for defendant.

### JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED, and DE-CREED:** that the classification of the Customs Service was reasonable and correct; and it is further

**ORDERED, ADJUDGED, and DE-CREED:** that this action be and the same hereby is dismissed.

---

6. Stated differently, the "product" of Czechoslovakia in this case included the usual container as well as its contents for purposes of headnote 3(e). *Footnote 6 in Original, Adler*, 68 Cust.Ct. at 168, 343 F.Supp. 943.

7. Other authority cited by plaintiff was similarly distinguishable.